UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


TRACY JEFFERSON,

     Plaintiff,

                                     Case No. 07-10465

-vs-                                 Judge Avern Cohn

CITY OF FLINT, a Municipal
Corporation, and OFFICER
TERRY LEWIS, individually
and in his official capacity,

     Defendants.

_____/

## MEMORANDUM AND ORDER GRANTING CITY OF FLINT'S MOTION FOR SUMMARY JUDGMENT AND DENYING OFFICER TERRY LEWIS' MOTION FOR SUMMARY JUDGMENT

### I. Introduction

This is a civil rights case brought under 42 U.S.C. § 1983. Plaintiff Tracy

Jefferson ("Jefferson") brings suit against defendants, the City of Flint and Flint Police

Officer Terry Lewis ("Lewis"), for violating her rights under the Fourth Amendment. She

also makes pendent state law claims. Jefferson says that, while he was detaining three

men outside her home, Lewis shot her as she exited the side door of the house. She

alleges that Lewis did not identify himself or warn her before firing the shot. Specifically,

Jefferson makes the following four claims:

Count I:     **42 U.S.C. § 1983 claims under the 4th and 14th Amendments (Lewis and City of Flint);**

Count II:    **Gross Negligence (Lewis);**

**Count III:** ~~Grossly Negligent Infliction of Emotional Distress (Lewis);~~[1]

**Count IV:** ~~Assault and~~[2] Battery (Lewis)

Before the Court is defendants' motion for summary judgment. For the reasons that follow, defendants' motion will be granted in part and denied in part.

## II. Factual Background

## A. The Incident

On December 31, 2006, Lewis was on a single-officer road patrol in north Flint. At approximately 10:00 p.m., he responded to a radio call of "shots fired." Arriving at the intersection to which he was dispatched, Lewis interviewed several individuals who told him that several rounds had struck the pavement of a nearby street shortly before he arrived. Lewis says he then heard more shots fired from a nearby area and drove his patrol car toward the sound of the shots. Lewis then exited his patrol car to determine the exact location of the shooter or shooters.

Carrying his department-issued shotgun, Lewis began a reconnaissance of the area. He was walking along Pierson Road, looking for evidence of the source of the gunfire, when he heard male voices to his east, on the south side of Pierson. Lewis heard more shots being fired and thought that they might be directed at him. He then spotted two men standing between the passenger side of a white Cadillac and the west side of Jefferson's house at 1301 West Pierson. The two men were Thomas Manning

---

[1] Count III was brought individually by Nicole Vaughn, who is no longer a plaintiff in this case. (See Amended Order Dismissing Plaintiff Nicole Vaughn Only Without Prejudice, Docket No. 17.)

[2] Jefferson has agreed to dismiss her state law claim of assault. (Plaintiff's Response Brief at 15.)

("Manning") and Victor Adams ("Adams").  Lewis says that Manning was holding a long gun, and Adams was bending over into the open trunk of the car. Lewis ordered the men to put their hands in the air.  He says that Manning dropped the gun and complied; Manning disputes this, saying that the gun had already been placed down when Lewis gave his order.  Lewis also says that one of the men initially ducked behind a pillar.  In any event, both men complied with Lewis's order and placed their hands on the west wall of Jefferson's house.

Lewis says that a third man, Taurean Stewart ("Stewart"), then appeared alongside of the other two, between the open front passenger door of the Cadillac and Jefferson's house, close to the side entrance door of the house.  Stewart also obeyed Lewis's order to face and place his hands on the wall.  However, Lewis says that Stewart ducked down behind the car several times during the course of the incident.

Lewis's attention was then drawn to a noise to his left, near the front door of the house.  He saw a woman, Nicole Vaughn ("Vaughn"), exit the house onto the front porch.  Lewis ordered Vaughn to go back into the house, and she complied.

Lewis then looked back toward the three male suspects.  He says that at this point, all three took their hands off the wall and moved toward the door.  At the same time, Lewis saw Jefferson opening the side door of the house.  As the door opened, Stewart began to move toward the open door.  Lewis says that, as Jefferson opened the door, he perceived her right arm to be outstretched toward him and saw a "shiny object" and a "flash," which he took to be a gunshot directed at him.  Believing he was being fired upon, Lewis fired his shotgun at Jefferson.

3

Jefferson disputes Lewis's account of the moments immediately prior to the shooting. She says that up until the time she was shot, her right hand remained on the door knob and was never outstretched. She says that she never stepped outside of the house. She also denies that there was any sort of "shiny object" or "flash" prior to the shooting. It is undisputed that, in fact, Jefferson was unarmed and was not carrying anything in her hands.

After firing the shot, Lewis checked his vest to determine if he had been struck by a shot. He did not re-rack the shotgun to allow for an additional shot or duck for cover.

### B. Plaintiff's Alleged Injuries

The blast from Lewis's shotgun struck Jefferson in the left side of her torso. She was shot once in the arm and chest with at least five shotgun pellets from an estimated distance of seven to twelve feet. The "wad" from the shot missed Jefferson and instead went through the aluminum and wood frame of the side door. Jefferson's injuries included fractured ribs and a collapsed left lung. She was discharged from the treating hospital on January 15, 2007, but made a subsequent visit in February 2007 to remove additional fragments from the shotgun pellets. Jefferson presently takes pain medication almost daily, and has breathing issues which may last the rest of her life. The scars from the gunshot wounds may require skin grafts.

### III. Summary Judgment

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The non-moving party may not rest upon his pleadings; rather, the nonmoving party's response "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Showing that there is some metaphysical doubt as to the material facts is not enough; "the mere existence of a scintilla of evidence" in support of the nonmoving party is not sufficient to show a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Rather, the nonmoving party must present "significant probative evidence" in order to defeat the motion. See Moore v. Philip Morris Co., 8 F.3d 335, 340 (6th Cir. 1993); see also Anderson, 477 U.S. at 249-50. Additionally, and significantly, "affidavits containing mere conclusions have no probative value" in summary judgment proceedings. Bsharah v. Eltra Corp., 394 F.2d 502, 503 (6th Cir. 1968).

The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." In re Dollar Corp., 25 F.3d 1320, 1323 (6th Cir. 1994) (quoting Anderson, 477 U.S. at 251-52). The Court "must view the evidence in the light most favorable to the non-moving party." Employers Ins. of Wausau v. Petroleum

Specialties, Inc., 69 F.3d 98, 101 (6th Cir. 1995). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. See Anderson, 477 U.S. at 255. Only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law may summary judgment be granted. Thompson v. Ashe, 250 F.3d 399, 405 (6th Cir. 2001).

**IV. Analysis**

**A. Jefferson's Claims Against Lewis**

**1. 42 U.S.C. § 1983, Excessive Force**

**a. Legal Standard**

At the summary judgment stage, the threshold question for a § 1983 claim against a police officer is: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier v. Katz, 533 U.S. 194, 201 (2001). If this question is answered in the affirmative, "the next, sequential step is to ask whether the right was clearly established." Id. Even where the facts arguably show a constitutional violation, an officer should be granted qualified immunity "[i]f the law did not put the officer on notice that his conduct would be clearly unlawful." Id. at 195. Qualified immunity thus grants police officers "ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." Hunter v. Bryant, 502 U.S. 224, 229 (1991).

Jefferson claims that the shooting amounts to the use of excessive force in violation of her Fourth Amendment rights. Excessive force claims under the Fourth

6

Amendment are evaluated under an objective reasonableness standard. The central question is thus whether a reasonably well-trained officer in Lewis's position would have known that shooting Jefferson was unreasonable under the circumstances known to Lewis. See Sova v. City of Mt. Pleasant, 142 F.3d 898, 903 (6th Cir. 1998). Subjective factors like Lewis's state of mind are irrelevant to this analysis. Id.

The reasonableness of an officer's use of deadly force depends in large part on the severity of the crime at issue and whether the victim was armed or posed a danger to the officer or others. It is unreasonable for an officer to seize an unarmed, non-dangerous suspect by using deadly force. Tennessee v. Garner, 471 U.S. 1, 11 (1985). The police may not use deadly force against a citizen unless "the officer has probable cause to believe that the [citizen] poses a significant threat of death or serious physical injury to the officer or others." Id. at 3. An officer's conduct should be "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham v. Connor, 490 U.S. 386, 396 (1989). The analysis thus makes "allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." Id. at 397.

**b. Discussion**

For the purposes of this motion, the Court accepts Jefferson's account that she did not step outside of the house before being shot, did not extend her arm toward Lewis, and did not have any "shiny object" that might have given the appearance of a muzzle flash. Read in this light, the record shows that, without warning, Lewis shot an unarmed woman who had not threatened him from close range. Under these

circumstances, Lewis did not have probable cause to believe that Jefferson was dangerous.  Jefferson did no more than open the door to her home as a police situation unfolded on the driveway outside.  She was not committing a crime and was not attempting to flee or evade police.  Accepting Jefferson's account, she had done little or nothing to indicate to Lewis that she was in any way dangerous.  Under the precedent cited above, her right not to be shot in these circumstances was clearly established.

Courts have declined to grant summary judgment in favor of defendant law enforcement officers even in situations that demonstrate considerably more danger to the officers and others than the situation here.  In Sova v. City of Mount Pleasant, for example, the police confronted an intoxicated, suicidal man who locked himself inside his parents' home and begun to cut himself with knives.  The man twice emerged from the house and started toward the police while carrying the knives.  The first time, an officer sprayed mace in his face, forcing him to retreat.  The second time, two other officers shot him three times from close range, killing him.  142 F.3d at 900-01.  The Sixth Circuit reversed the district court's grant of summary judgment in favor of the two officers who fired their guns, specifically noting that it was inappropriate at the summary judgment stage to credit an officer's version of events over contrary evidence.  Id. at 903.  The Sixth Circuit also held that where "the legal question of qualified immunity turns upon which version of the facts one accepts, the jury, not the judge, must determine liability."  Id.  Likewise, because of the factual disputes here, it would not be appropriate to grant summary judgment for Lewis on the basis of qualified immunity.

The cases on which Lewis relies are inapposite because they involve factual scenarios vastly more dangerous to police than the danger posed by Jefferson in this

8

case.  See, e.g., Untalan v. City of Lorain, 430 F.3d 312 (6th Cir. 2005) (police officer fatally shot schizophrenic man who, seconds before being shot, attacked another officer with a butcher knife); Dudley v. Eden, 260 F.3d 722 (6th Cir. 2001) (police shot suspect after he robbed a bank, stole a car, and swerved into oncoming traffic as part of a plan "to commit suicide by way of police intervention").

### 2.  Gross Negligence

Michigan courts do not allow a plaintiff to maintain a negligence claim for intentional actions.  VanVorous v. Burmeister, 687 N.W.2d 132, 143 (Mich. Ct. App. 2004).  There is no suggestion in the record that the shooting was accidental.  Lewis admits that he intentionally aimed and fired the shotgun at Jefferson, and Jefferson does not call this admission into question.  Accordingly, Lewis is entitled to summary judgment with respect to Jefferson's gross negligence claim.

### 3.  Battery

Generally, to recover for battery, a plaintiff must demonstrate a "willful and harmful or offensive touching of another person which results form an act intended to cause such a contact."  Espinoza v. Thomas, 472 N.W.2d 16, 21 (1991).  However, "government actors may find it necessary – and are permitted – to act in ways that would, under different circumstances, subject them to liability for an intentional tort."  VanVorous, 687 N.W.2d at 142.

> It is well-settled in our state's jurisprudence that a police officer may use reasonable force when making an arrest.  The force reasonably necessary to make an arrest is "the measure of necessary force that an ordinarily prudent and intelligent person, with the knowledge and in the situation of the arresting officer, would have deemed necessary.  Thus, the standard is an objective one under the circumstances.

9

Id. at 141 (citations and internal quotation marks omitted).

The analysis of the battery claim therefore tracks the analysis of the § 1983 Fourth Amendment claim discussed above. The central question is whether Lewis's actions were objectively reasonable. For the reasons discussed above, there are genuine issues of material fact surrounding the reasonableness of Lewis's actions, and summary judgment as to the battery claim is therefore inappropriate.

## B. § 1983 <u>Monell</u> Claim Against the City of Flint

Jefferson claims that the City of Flint should also be held liable for Lewis's actions because it failed to establish, maintain, or enforce proper police procedures that would have prevented the shooting. To prevail on a failure to train claim under § 1983, a plaintiff must prove that "[1] a training program is inadequate to the tasks that the officers must perform; [2] that the inadequacy is the result of the [municipality's] deliberate indifference; and [3] that the inadequacy is closely related to or actually caused plaintiff's constitutional injury." <u>Hill v. McIntyre</u>, 884 F.2d 271, 275 (6th Cir. 1989). Where a policy is not facially unconstitutional, a plaintiff must bring additional proof beyond her own unique circumstances in order to establish a valid claim under § 1983. <u>City of Oklahoma City v. Tuttle</u>, 471 U.S. 808, 823-24 (1985).

There is no substantial evidence to support Jefferson's claim of an unconstitutional failure to train. The City of Flint has proffered evidence showing that it regularly conducts a variety of firearms training programs for police officers and that Lewis had regularly participated in such programs.

10

In her papers, Jefferson points to the testimony of Sergeant Marcus Mahan ("Mahan"), who suggested that, during the firearms simulator training given to Flint police officers, the decision whether or not to shoot can be "subjective" and is "completely up to the officer." However, Mahan also testified that where officers make inappropriate decisions during the training simulations, they are corrected. Mahan does not appear to have been articulating a legal standard when he made the statement on which Jefferson relies. A police officer is of course not *required* to shoot a suspect, even when doing so would be objectively reasonable under the circumstances. In this sense, Mahan accurately described the decision of whether to shoot a suspect as a "subjective" one. Mahan's deposition testimony therefore does little or nothing to substantiate Jefferson's claim.

Jefferson also notes that defendant's expert on police practices, retired police officer Scott Reitz, made the following statement in his Rule 26 Report:

> The contention that Ofcr. Lewis did not receive adequate training in low light level situations as advocated by myself is probably true however; [*sic*] the cost for such training runs into the several millions [of dollars] for a department and budgetary restraints and manpower allocations rarely allow for such a level of training.

Jefferson has not come forward with any case law to suggest that a police department may be required as a constitutional matter to provide firearms training in low light level situations. The expert report suggests that such training, while probably useful to officers on patrol, is rarely provided due to its high cost and is therefore not indicative of

the sort of "deliberate indifference" necessary to sustain a § 1983 claim against a municipality.

## V. Conclusion

For the reasons stated above, Lewis's motion for summary judgment is GRANTED with respect to Jefferson's gross negligence claim and otherwise is DENIED. The City of Flint's motion for summary judgment is GRANTED; the City of Flint is DISMISSED from the case.

SO ORDERED.

 s/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE


Dated: August 5, 2008


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, August 5, 2008, by electronic and/or ordinary mail.

 s/Julie Owens
Case Manager, (313) 234-5160